UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                    Case No. 14-20597
                                                            HON. DENISE PAGE HOOD

v.

LUIS COTAYA,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE [ECF No. 54]**

**I.    Introduction**

On October 23, 2020, Defendant filed a Motion for Sentence Reduction pursuant to §3582(c)(1)(A) ("Motion" or "Motion for Compassionate Release"). The Government filed a timely response, and Defendant filed a reply on November 24, 2020. For the reasons set forth below, Defendant's Motion is denied.

**II.    Background**

Defendant traveled from California to Detroit in September 2014 to deal with customers who were struggling to sell kilograms of heroin that Defendant's organization supplied. When Defendant arrived, he decided to take the kilograms from the Detroit customers and deliver them to others he had waiting in Chicago. Messages in Defendant's Blackberry made it apparent he was not just a courier; they

showed that he had decision making authority over the Detroit drug customers.[1] His customer got Defendant a car so he could take the kilograms to Chicago. (*Id.* at PgID 147, 139-140 ("I'm still here waiting for them to get me a car" "there acting dumb with the ride…they don't want to rent it.")).

Michigan State Police stopped Defendant as he was transporting almost seven kilograms (made up of five bricks) of heroin from Detroit to Chicago. (Presentence Investigation Report (PSR) ¶ 12). Defendant was alone and driving the rental vehicle without a valid license. (*Id.*). He gave the officer evasive and vague information, stated that he flew from California that morning to visit his friend Jason in Detroit, and claimed he was going to Chicago to meet a good friend Alex. Despite his friendships, Defendant did not know Jason or Alex's last name. (*Id.*).

Defendant committed this offense while he was on probation for his second drunk driving offense. (PSR ¶¶ 70-72). He left California without his probation officer's permission. He drove on a suspended license when he attempted to deliver

---

[1]Defendant messaged other contacts in his phone about his efforts: "I snapped on them in the morning," but "like good black people they backed down;" "we're having difficulties with the blacks…they still have 8 complete and I told them I needed them and they got all jumpy but I told them to fuck off. I'm trying to get a ride to Chicago" (ECF No. 45-1: Defendant's Blackberry Messages: PgID. 148, 146, 157). Defendant indicated that his customers "have only started with one, this is not good and they have struggled" and "thet still got 8. They got hot cause I tolled them I'm takimg all of them." (*Id.* at PgID 157, 140). Defendant ultimately decided "Ima take back probly 8" and that another customer "want 6" so "ima just leave him the one they opened." (*Id.* at PgID. 147).

2

all the heroin to Chicago. Prior to this incident, Defendant had accumulated four prior convictions for firearms possession and drunk driving, for which he had served jail terms. (*Id.* at ¶¶ 28-31). On October 21, 2016, Defendant pleaded guilty to possession with intent to distribute at least one kilogram of heroin. (ECF No. 37). On March 16, 2017, this Court sentenced Defendant to 99 months (8.25 years) in prison. (ECF No. 47). On October 12, 2017, Defendant reported to the BOP. (ECF No. 58, Ex. 1).

Defendant is 36 years-old. He has the CDC-recognized preexisting condition of obesity (BMI 31.3 in December 2019 but apparently 36.3 in March 2020) and allergic rhinitis. On July 11, 2020, Defendant tested positive for COVID-19. He was asymptomatic and placed in isolation for more than two weeks. Two days after he was isolated, on July 13, 2020, Defendant requested compassionate release from the warden at FCC Beaumont (part of the corrections complex that includes FCI Beaumont Low where Defendant is housed in Texas). His request was based on his generalized concerns about COVID-19 and his obesity, and his email did not mention his positive COVID-19 test. (ECF No. 54-3, PgID. 209). On July 22, 2020, the warden denied Defendant's request. (*Id.* at PgID. 210). As a result, it is undisputed that Defendant has exhausted his administrative claim.

**III.  Analysis**

A court may reduce a term of imprisonment if it determines "extraordinary and

compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). A court also must weigh the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement[]" with which courts must comply. 18 U.S.C. § 3582(c)(1)(A).

Section 1B1.13 of the Sentencing Guidelines states that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and limits compassionate release to a narrow group of defendants who satisfy at least one of four categories of "extraordinary and compelling reasons." Those four categories are based upon: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which the Bureau of Prisons has set forth in Program Statement 5050.50.[2] U.S.S.G. § 1B1.13 cmt. n.1. *See also United States v. Sapp*, Case No. 14-20520, 2020 WL 515935, at *2 (E.D. Mich. Jan. 31, 2020) (Leitman, J.) (summarizing compassionate release requirements).

---

[2]The BOP has released Program Statement 5050.50 to guide its determination of extraordinary and compelling circumstances. Federal Bureau of Prisons, U.S. Department of Justice, Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (2019). *See also* 18 U.S.C. § 3582(c)(1)(A).

The Motion is based on Defendant's medical condition(s). Defendant asserts that his health conditions, specifically obesity and allergic rhinitis, in this time of the COVID-19 pandemic, a situation which did not exist when he was sentenced, constitute an extraordinary and compelling reason for reducing his sentence. It is undisputed that the Center for Disease Control ("CDC") has stated that "obesity" increases the risk of serious illness with COVID-19, independent of age. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html and https://perma.cc/UJT9-JMHS.

For purposes of the determining the Motion, the Court will assume, without deciding, that Defendant can establish an "extraordinary and compelling reason" for release due to his health conditions. The Court notes that the CDC has indicated certain classes of individuals are at higher risk for developing severe illness from COVID-19, including persons suffering from underlying medical conditions such as obesity (at any age). *Id.*; Rabin, Roni, "Obesity Raises the Risk of Death from Covid-19 Among Men," New York Times, 8/14/2020 (discussing a study that identified obesity as "an independent risk factor for dying among Covid-19 patients — most strikingly, among younger and middle-aged adults 60 and younger, and particularly among men.").

Courts have not, however, granted sentence reductions simply because a

5

defendant suffers from obesity. *See, e.g., United States v. Lawrence*, No. 2020 WL 5944463 (E.D. Mich. Oct. 7, 2020) (obesity); *United States v Green*, No. 13-20606, 2020 WL 5769141 (E.D. Mich. Sept. 28, 2020) (same); *United States v. Smith*, No. 17-CR-20753, 2020 WL 5440331 (E.D. Mich. Sept. 10, 2020) (54 years old, hospitalized and was on respirator)*; United States v. Baydoun*, No. 16-20057, 2020 WL 4282189 (E.D. Mich. Jul. 27, 2020) (obesity). *See also United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. Jul. 14, 2020) (noting that, because the CDC in 2017-18 had deemed approximately 42.4% of American adults obese and an additional 32% overweight, being mildly obese (BMI of 31.8) was not so extraordinary that "injustice would result if the relief is not granted").

But, even if the Court were to find that Defendant's medical conditions constitute an extraordinary and compelling reason for release,[3] the Court concludes that Defendant's conduct with respect to the underlying offense and his criminal history make him a danger to the community. This finding precludes releasing Defendant pursuant to USSG § 1B1.13(2) and means that a weighing of the § 3553(a)

---

[3]The Court acknowledges Defendant's argument that the number of COVID-19 positive cases have skyrocketed in the last month but does not find that fact to outweigh the risk of dangerousness posed by Defendant's early release. The Court notes the Government's suggestion or implication that Defendant's recovery from a COVID-19 infection in July 2020 is evidence that he is less at risk of complications if infected with COVID-19. The Court finds, however, that Defendant's recovery from a prior COVID-19 infection is not indicative that he will not be subject to a higher risk for developing severe illness if infected with COVID-19 again in the future.

factors—which the Court must also consider under § 3582(c)(1)(A)—does not support the release of Defendant.

Defendant cites a number of reasons why his sentence should be reduced at this time. He states that he was on bond for over three years with no issues, and self-surrendered on October 12, 2017. He asserts that he has completed approximately 52% of his sentence (when taking into consideration a reduction for good time credit), and his release date is October 19, 2024 (with all good time credit). Defendant states that he has been designated a "minimum" security risk and, as of January 22, 2020, the BOP recommended him for an additional "decrease" in security to "minimal." See Ex. 4, Custody Classification Form, 1/22/20. Defendant has had no tickets, violations, or disciplinary incidents while in custody. He indicates that he entered prison in 2017 poised to rehabilitate himself as much as possible, and by 2018, he was named FCC Lompoc's "Student of the Year." The Court agrees that all of these things are positives, and it commends Defendant on utilizing his period of incarceration to improve his chances of succeeding without criminal activity when he is released.

When assessing the Motion, however, the Court must consider Section 1B1.13(2), which only permits release if a "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." This means that violent offenders, including most drug dealers, are not eligible for release.

*See United States v. Stone*, 608 F.3d 939, 947–48 & n.6 (6th Cir. 2010); *United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020). Defendant was sentenced by the Court to 99-months for Possession With Intent to Distribute Heroin because he was convicted of trafficking several kilograms of heroin, a very dangerous, addictive and potentially deadly narcotic. Drug trafficking is an inherently dangerous offense.

Defendant was not carrying a firearm at the time of his arrest (although it is noted that he had just gotten off a commercial airliner hours before his arrest), but he has two convictions for carrying a loaded firearm. Defendant lied to police when he was stopped, and it appears that he was undeterred by prior jail sentences – Defendant was on probation for his second drunk driving offense when he committed the underlying crime. Defendant also has a substance/alcohol abuse problem, as evidenced by the two drunk driving convictions. The Court also notes that Defendant has only served about 40% of the sentence imposed by the Court, and his earliest release date (with fully credit for good conduct) is still four years away (after having only served three years).

Taking all of the foregoing into consideration, the Court finds that a reduction of Defendant's sentence under § 3582(c)(1)(A) is not warranted. For the same reasons, the Court concludes that Defendant's history and characteristics and the

factors set forth in 18 U.S.C. § 3553(a) do not support releasing Defendant. As the Court cannot discount the risk of danger to the community posed by Defendant, it will not grant Defendant a compassionate release due to the COVID-19 pandemic. Defendant's Motion is denied.

## IV. Conclusion

Accordingly,

IT IS ORDERED that Defendant's Motion for Compassionate Release [ECF No. 54] is DENIED.

IT IS ORDERED.

Dated: December 3, 2020

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE